MALCOLM MARTIN, Appellant, *v.* CLARA MARTIN, Respondent.

Argued October 15, 1954; decided December 31, 1954.

*James N. Vaughan* and *Hugh Lincoln Hoey* for appellant. I. The 1949 decree is *res judicata* with regard to the religious education of the boy because no facts were proved tending to show that the effects of such education have been harmful to him or that there has been any material change in circumstances since 1949. On the facts proved, either respondent's motion should have been denied or custody transferred to the father. (*People ex rel. Portnoy* v. *Strasser,* 303 N. Y. 539; *People ex rel. Sisson* v. *Sisson,* 271 N. Y. 285; *Duryea* v. *Bliven,* 122 N. Y. 567; *Matter of Noel,* 173 Misc. 844; *Haskell* v. *Haskell,* 201 App. Div. 414, 236 N. Y. 635, 207 App. Div. 723; *Armour* v. *Armour,* 275 App. Div. 941; *People ex rel. Glendening* v. *Glendening,* 159 Misc. 215, 259 App. Div. 384, 284 N. Y. 598; *Bunim* v. *Bunim,* 298 N. Y. 391.) II. The twelve-year-old boy of immature judgment should not have been permitted, on the facts proved in this case, to decide for himself the nature of his religious education. (*International Text Book Co.* v. *Connelly,* 206 N. Y. 188; *Greenburg* v. *New York Central & H. R. R. R. Co.,* 210 N. Y. 505; *Matter of Vardinakis,* 160 Misc. 13; *Matter of Santos,* 278 App. Div. 373, 304 N. Y. 483, 279 App. Div. 578; *Matter of Zorach* v. *Clauson,* 303 N. Y. 161, 343 U. S. 306; *People ex rel. Portnoy* v. *Strasser,* 303 N. Y. 539; *Matter of Auster* [*Weberman*], 302 N. Y. 855; *People ex rel. Glendening* v. *Glendening,* 159 Misc. 215, 259 App. Div. 384, 284 N. Y. 598; *Bunim* v. *Bunim,* 298 N. Y. 391; *Lester* v. *Lester,* 178 App. Div. 205, 222 N. Y. 546; *Matter of Jiranek,* 183 Misc. 704, 269 App. Div. 709.) III. Independently of the 1949 judgment and because of the written antenuptial agreement, the father possessed the right and obligation to control the religious educa-

tion of his child and thus the right and obligation to protect the religious heritage of the child. (*Weinberger* v. *Van Hessen,* 260 N. Y. 294; *Matter of Mancini,* 89 Misc. 83; *Matter of Kananack,* 272 App. Div. 783; *Matter of Charter,* 265 App. Div. 1006; *Matter of Glavas,* 203 Misc. 590.)

*Malcolm I. Ruddock, Bertram E. Gendar* and *Edward A. Niles* for respondent. I. On the facts presented the Referee was not bound by *res judicata* and had full power and discretion to grant respondent's motion. (*People ex rel. Sisson* v. *Sisson,* 271 N. Y. 285.) II. In the light both of statute and precedent, a child's interests control in such questions as the present. III. An antenuptial agreement cannot control as against the child's welfare. (*Denton* v. *James,* 107 Kan. 729; *Boerger* v. *Boerger,* 26 N. J. Super. 90; *Commonwealth* v. *McClelland,* 70 Pa. Super. Ct. 273; *Andrews* v. *Salt,* L. R. 8 Ch. 622; *Matter of Nevin,* [1891] Ch. 299; *Purinton* v. *Jamrock,* 195 Mass. 187; *Matter of M'Dowle,* 8 Johns. 328; *People ex rel. Fowler* v. *Pillow,* 1 Sandf. 672; *Matter of Watson,* 10 Abb. N. C. 215.) IV. A child should not be punished for its custodian's fault, if any. (*Stourton* v. *Stourton,* 8 De G. M. & G. 760; *Hawksworth* v. *Hawksworth,* L. R. 6 Ch. 539.) V. The father's wishes have no preference and must yield to his child's welfare. (*Matter of Agar-Ellis,* 10 Ch. D. 49; *Matter of W,* [1907] Ch. 557; *Ward* v. *Laverty,* [1925] A. C. 101; *Matter of Thain,* [1926] Ch. 676.) VI. Religious education outside of the faith of the custodian is disfavored. (*Weinberger* v. *Van Hessen,* 260 N. Y. 294.) VII. A court is justified in consulting and giving weight to the preferences of a child of Malcolm's age and qualities. (*Matter of Vardinakis,* 160 Misc. 13.) VIII. Any attempt to change a child's actual religious faith is to be avoided on principle. (*Matter of Newton,* [1896] Ch. 740.) IX. The constitutional provisions protecting religious liberty forbid restoration of the original order at this date.

*Per Curiam.* After a fairly extensive hearing, at which the boy, then twelve, now fourteen, years old, testified, the Referee, appointed to hear and determine the matter, decided that the " boy's welfare " called for modification of the decree in the respects requested, and the Appellate Division affirmed. There being ample evidence to support both the finding that the

youngster was old enough to testify intelligently and the conclusion that the modification was for his best interests and welfare, the order appealed from should be affirmed, with costs.

DESMOND, J. (dissenting). I dissent for these reasons:

1. There is no finding and no testimony that enforcement of the religious training provision of the 1949 judgment (and of the 1938 agreement which it confirmed) would damage, or has damaged, the boy, mentally, physically or in any other way. All statements as to his becoming " unhappy " or " mentally disturbed " or " ill-adjusted " are taken from the mother's ex parte affidavit which is a mere pleading, not proof. Neither the mother, nor the boy nor anyone else gave any testimony as to any such mental hurt or disturbance. The Referee's decision makes no such finding. The Referee amended the decree solely because, so he found, this twelve-year-old boy " has a mind of his own ", because failure to amend the decree " would strip him of his independent judgment in matters of this kind ", and because (so held the Referee) " neither the mother's wishes nor the father's wishes should control what is here to be done ". True, at the end of the decision, the Referee said he was doing what " is best for the boy " but it is impossible to read the decision as based on anything except the boy's own wishes and his supposedly mature and considered choice of a religion for himself. That was not within the Referee's competency, in the face of a Supreme Court judgment as to the place and nature of his religious training, based on a solemn prenuptial agreement.

2. The idea that a child of twelve is competent to make a choice binding on the Supreme Court and on his parents in such a matter is not only contrary to our decisions (see *Bunim* v. *Bunim,* 298 N. Y. 391), and contrary to all human experience, but is directly opposed to the *parens patriæ* public policy of New York (see Alcoholic Beverage Control Law, §§ 100, 126; Pari-mutuel Revenue Law [L. 1940, ch. 254], § 8; Domestic Relations Law, §§ 15-a, 72; Labor Law, § 130; Education Law, art. 65, part I; General City Law, § 18-b; Penal Law, §§ 484, 486; Personal Property Law, § 163; Debtor and Creditor Law, § 260; Judiciary Law, § 474; Correction Law, § 485; Vehicle and Traffic Law, § 20; N. Y. Const., art. VI, § 18; Mental

Hygiene Law, § 132; Correction Law, § 610; Social Welfare Law, § 373; Code Crim. Pro., §§ 483, 913-m; N. Y. City Dom. Rel. Ct. Act, § 88, subd. 5).

3. This sort of prenuptial agreement is enforcible like any other, unless and until its enforcement is shown to be harmful to the child. "Agreements between parents for a particular sort of religious upbringing have in general been held valid in this country" (*Weinberger* v. *Van Hessen,* 260 N. Y. 294, 298). Particularly must this be so when the agreement has been confirmed by, and written into, a judgment.

4. Although the child's welfare is a paramount consideration in every custody case, we cannot close our eyes to fundamental principles as to judgments and agreements, and we cannot forget ancient maxims denying equitable relief to suitors whose hands are unclean. Respondent failed to prove that an amendment to the decree was suggested by anything except the boy's own desires. She did prove affirmatively that she herself had created this troublesome position by violating not only her solemn agreement, but the plain condition under which custody was decreed to her.

LEWIS, Ch. J., DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur in *Per Curiam* opinion; DESMOND, J., dissents in an opinion in which CONWAY, J., concurs.

Order affirmed.