EDWARD J. MCLAUGHLIN v. EUNICE R. MCLAUGHLIN

SUPERIOR COURT    WINDHAM COUNTY    FILE NO. 10808

Memorandum filed April 29, 1957.

*Neil F. Murphy,* of Bristol, for the plaintiff.

*Atwood Collins, II,* of Hartford, for the defendant.

HOUSE, J.  In this proceeding the plaintiff seeks, through a writ of habeas corpus, to obtain custody of the three children of the defendant and himself. The children, aged 14, 12 and 8, are presently living with their mother, the defendant.  The domestic differences of the parties reached a climax in separate actions for divorce and separation brought to the Superior Court in Hartford, returnable in March, 1956.  (*Edward McLaughlin* v. *Eunice R. McLaughlin,* No. 105303-J, and *Eunice R. McLaughlin* v. *Edward J. McLaughlin,* No. 105225-J)  The cases were tried together, and in a joint memorandum of decision the court, *Cotter, J.,* denied both petitions.  A difference in religious beliefs was a substantial factor in the breaking up of the home. The court concluded its memorandum of decision: "The court cannot find for either one because neither has sustained the burden of proof by showing the court by a fair preponderance of the evidence that one or the other was the one at fault."  The judgment contained no order with respect to custody of the children.

From the evidence presented, it appears that despite the marital discord both parents have real affection for the children.  They are now living with their mother in a good home in Eastford.  She is in all respects a fit and proper person to have custody of her children, is a good housekeeper, takes good care of them, and they are now happy and well adjusted to their new environment and active in school and community affairs.  They attend a local Sunday school regularly and receive religious instruction in the Christian faith of their mother.

As contrasted with the present living arrangements of the children with the defendant, their mother, the plaintiff is unable to offer any suitable alternative. It may also be observed that any change in the custody of minor children which subjects them to new routines and different standards of discipline is undesirable except in cases of necessity. The evidence leads to the inescapable conclusion that the welfare of these young children will be best served by leaving them in the custody of the defendant. Indeed, aside from the question of the religious education of the children, the plaintiff admits that the defendant is a fit custodian of the children. It is well established that in any question concerning the custody of children their welfare is the primary concern. *Murphy* v. *Murphy,* 143 Conn. 600, 603; *Sullivan* v. *Sullivan,* 141 Conn. 235, 242; *Scott* v. *Furrow,* 141 Conn. 113, 120; *Fagan* v. *Fagan,* 131 Conn. 688, 690; *Mullins* v. *Becker,* 113 Conn. 526, 529.

While admitting the general fitness of the defendant as a proper custodian of the children, the plaintiff bases his claim to custody upon an antenuptial agreement that the children should be reared in his religious faith and on the basis of this agreement claims an order for custody of the children or an order tantamount to the specific enforcement of the antenuptial agreement. This a civil court will not order. See note, "Effect of Agreement between parents as to religious education and nurture of child," 12 A.L.R. 1153, and cases therein cited; Friedman, "Parental Right to Control the Religious Education of a Child," 29 Harv. L. Rev. 485; White, "The Legal Effect of Ante-Nuptial Promises in Mixed Marriages," Eccles. Rev., April, May and June, 1932. The latter treatise, while attempting to explain away the long line of cases holding antenuptial agreements for the specific religious training of as yet unborn children unenforceable, states

[p. 23] : "The strongest declaration by an American court in favor of the enforceability of the ante-nuptial promises is a dictum of an Ohio Court." It may be noted that even this dictum (*In re Luck,* 10 Ohio Dec. 1, 4 [1900]) has not been followed in any subsequent decision in that jurisdiction.

The law is absolutely impartial in matters of religion. "When infants become wards of the court the first and paramount duty of the court unquestionably is to consult the well-being of the infants, and in discharging that duty the court recognizes no religious distinctions." Friedman, op. cit., 491. A court will not take a child's religious education into its own hands short of circumstances amounting to unfitness of the custodian, and in a dispute relating to custody, religious views afford no ground for removing children from the custody of a parent otherwise qualified. *Matter of Kananack,* 272 App. Div. 783, 784. All Christian religions stand on the same footing in the eyes of the law. *Boerger* v. *Boerger,* 26 N.J. Super. 90, 95.

The provisions of the Connecticut constitution, furthermore, expressly prohibit such an order as the plaintiff seeks—to require by judicial decree that when parents are in disagreement their children be required to be raised as members of one Christian sect rather than another. Article seventh, § 1, is explicit: "It being the duty of all men to worship the Supreme Being, the Great Creator and Preserver of the Universe, and their right to render that worship, in the mode most consistent with the dictates of their consciences; no person shall by law be compelled to join or support, nor be classed with, or associated to, any congregation, church or religious association." See also Conn. Const. Art. I, § 3; *Whalen* v. *Olmstead,* 61 Conn. 263, 270; *St. John's Parish* v. *Bronson,* 40 Conn. 75, 76. "The law does not, indeed, prescribe any rules of faith, nor mode

of worship, nor attempt to enforce practical piety:—it simply recognizes the great doctrines of Christianity, and preserves them from the open assaults of their enemies. This is all a legislature or court can rightfully do." *Atwood* v. *Welton,* 7 Conn. 66, 77.

The plaintiff has failed to establish that the welfare of the children would be enhanced by any change in their present situation. Indeed, it would be most " 'unfortunate for the children to be torn between the differing religious faiths of the parents.' " *Pope* v. *Pope,* 267 S.W.2d 340, 343 (Mo. App.).

The plaintiff's petition is denied, custody of the children is granted to the defendant subject to the right of reasonable visitation on the part of the plaintiff, which shall include the right to visit and have the children with him on Sundays between the hours of one and seven and during the time of his annual summer vacation.

The defendant seeks an order for support and maintenance for herself and the children and it appears that the plaintiff is presently paying the sum of $75 a week for this purpose. Under the circumstances, the financial arrangements agreed upon by the parties would appear to be equitable. However, in the present state of the pleadings and the provisions of § 7339 of the General Statutes, any present order for support must be limited to support for the children. Practically, such a limitation can make no difference because if the defendant had to seek employment to support herself the expense for care and supervision of the children would obviously require a larger contribution from the plaintiff for their care. For these reasons an order may enter that the plaintiff contribute $75 a week for the support of the three minor children except for such vacation weeks as the children spend with him.