**HACKETT, Plaintiff-Appellee, v. HACKETT, Jr., Defendant-Appellant.**

Ohio Appeals, Sixth District, Lucas County.

No. 5073. Decided May 19, 1958.

486

Holloway, Peppers & Romanoff, for plaintiff-appellee.
William A. Finn, for defendant-appellant.

(SKEEL, PJ, HURD and KOVACHY, JJ, of the Eighth District, sitting by designation in the Sixth District.)

## OPINION

By SKEEL, PJ.

This appeal comes to this court from a judgment of the Court of Common Pleas of Lucas County denying the motion of the defendant seeking an order to hold this plaintiff in contempt of court. The action, as originally filed by the plaintiff, was one seeking a divorce from the defendant.

The parties, as is disclosed by the plaintiff's petition. were married September 16, 1949. A child (Marcia Hackett) was born of said marriage on August 15, 1950. The action in divorce was filed January 10, 1956, and the decree of divorce was entered June 8, 1956. The defendant did not contest the action.

The decree of the court, in addition to granting a dissolution of the marriage of the parties based on the defendant's aggressions, awarded custody of the child to plaintiff. The court then provided for the support of said child, granted alimony to the plaintiff, and made a division of property. The decree of the court adopted the provisions of a Separation Agreement entered into between the parties on January 7, 1956, by providing that : " * * * the custody, control, education, religious training and supervision of said minor child, division of property, the provision for support of said child and the plaintiff, be and the same is hereby adopted * * *."

Paragraphs 10, 11 and 12 of the Separation Agreement referred to provide in substance that the daughter of the parties shall be reared in

the Roman Catholic Faith exclusively and that she will make her first communion, be confirmed therein, and attend all services as prescribed by the Church. The wife agreed to attend to the daughter's observing of Friday regulations of abstinence and Lent regulations as provided by the Church. It was also provided that said daughter, Marcia Hackett, attend Ladyfield School for her elementary grade school education or some other comparable private school operated by Roman Catholics or a Roman Catholic Order.

The trial court overruled the defendant's motion for a citation in contempt and dismissed the motion and entered final judgment against the defendant.

The appellant claims the following errors:

1) The judgment of the Common Pleas Court is contrary to law.

2) The Common Pleas Court abused its discretion in adjudging plaintiff appellee not guilty of contempt.

The motion to show cause was filed with a motion seeking a change of custody of the child to the father. Hearing of the motion last mentioned was postponed by agreement until the final determination of the contempt proceeding. It is, therefore, still pending.

The contempt proceeding was presented on a stipulation of facts. The motion, as filed, stated that the order in contempt was requested because the plaintiff had violated the order of the court in not continuing the education of Marcia Hackett in Ladyfield School, and at the time of the filing of the motion, she had, in fact, been entered by the plaintiff as a student in a public school in Toledo. The plaintiff is a member of the Protestant Faith.

The stipulation admitted the facts alleged in the motion. The plaintiff's claim is that that part of the Separation Agreement adopted by the decree of the court dealing with the duty of the plaintiff to cause her daughter to be educated in a Catholic School and to be brought up in the Catholic Faith is void and unenforceable.

The **Ohio Constitution, Art. 1, Sec. 7,** in part, provides:

"All men have a natural and indefeasible right to worship Almighty God according to the dictates of their own conscience. No person shall be compelled to attend, erect, or support any place of worship, or maintain any form of worship, against his consent; and no preference shall be given, by law, to any religious society; nor shall any interference with the rights of conscience be permitted. * * *."

The force of this provision is to make observance of religious doctrine a matter of personal choice uncontrolled by law or decree of a court. Nor can the free choice of religious practices be circumscribed or controlled by contract. With these principles, the weight of the case law of this state, of our sister states and of the United States, is in almost unanimous accord and with these principles, the parties here contending, are not in dispute. It is the claim of the defendant that insofar as the plaintiff is concerned, she may follow any religious doctrine that satisfies her conscience, but that by her agreement, adopted by the court as a part of its decree in this case, the court is vested with the power to force specific performance of her agreement to send the

daughter of the parties to a Catholic School and to educate her in the Catholic Faith by judgment in contempt.

Certainly it cannot be contended that there was any consideration or benefit flowing to the plaintiff from such promise insofar as the wife's ability to secure a decree in the divorce action was concerned as contended by the defendant. A husband or wife is not entitled to a divorce without judicial proof of some breach of the marital duty as provided by law on the part of a party to such relationship. Nor are any of the obligations of support and the right of custody to be considered by the court on any basis except with such as the court has the legal right to deal. It is also true that the court could not, by its own motion, enter a decree directing the religious upbringing of Marcia in a particular faith. So that the defendant's claim, that the plaintiff was "able to obtain a divorce and custody without contest by virtue of the Separation Agrement," has no foundation in fact or law.

It must be evident that the agreement which the defendant seeks to enforce was between the parents of the child whose religious upbringing is the basis of this action. Such promise was made in an antenuptial agreement and again when the relationship between them was still man and wife but pending separation. Could it be asserted that as long as the relationship of husband and wife continued that the courts would have jurisdiction of an alleged breach of such a promise by either husband or wife? The religious training of children is a family matter, subject to change in response to the wishes of the parents or either of them and a disagreement between them on this subject, while living together as husband and wife, is not a justiciable matter.

In the case of People ex rel. Sisson v. Sisson, 271 N. Y. 285, 287 N. E. 2d 660, 661, the court said:

"The court cannot regulate by its processes the internal affairs of the home. Dispute between parents when it does not involve anything immoral or harmful to the welfare of the child is beyond the reach of the law. The vast majority of matters concerning the upbringing of children must be left to the conscience, patience, and self-restraint of father and mother. No end of difficulties would arise should judges try to tell parents how to bring up their children. Only when moral, mental, and physical conditions are so bad as seriously to affect the health or morals of children should the courts be called upon to act."

Certainly if an agreement is unenforceable at the time it is made, it does not gain in stature with respect to its unenforceable provisions because of the subsequent divorce of the parties. There is no place in this record where there is the slightest suggestion that the plaintiff is not a proper person to have custody of Marcia. The only controversy here is over her religious training as dictated by the Separation Agreement. This is the only question presented.

Some point is made by the defendant appellant that the statutes of Ohio, dealing with religious requirements in adoption and guardianship matters, express a public policy of the state that supports the appellant's claims in this case, that is, that provisions providing for religious training in a separation agreement adopted by the court in its decree of divorce are a subject which the courts have power to enforce in a civil

proceeding. No doubt the Legislature, in dealing with these questions in the statutes (§§3107.05 and 2151.32 R. C.), has directed that religious background is a fact to be considered in adoption and guardianship cases. Such provisions certainly provide for considerations that are fundamental in the proper upbringing of every child who, through no fault of its own, can no longer live in the family circle. No influence could be a more comforting aid to the peace of mind of a child in adapting himself to new surroundings than the continued practice of the religious faith to which the child has been accustomed. But these considerations are not here present. The husband seeks to continue a practice, not compatible with the mother's wishes, which he could not harmoniously resolve while yet a member of the household. The child is now under the mother's custody. The promise was one dealing with a service which she is now not willing or completely able to satisfactorily perform. The child is as much her child as that of the defendant appellant with the additional fact that she has been awarded custody in an action in which a decree was entered because of his aggressions. She is now the head of the household of which he is no longer a member. There is no analogy between the statutes cited by the defendant appellant and the theory upon which this case must be decided.

Coming directly to the point to be decided, it is our conclusion that the provisions of the Separation Agreement, dealing with the promise of the mother to see to it that the daughter, placed in her custody, be reared in the Catholic Faith and attend a school affiliated with the Catholic Church, cannot be enforced by judicial decree. The question as thus stated has been exhaustively researched by counsel for both parties and the leading cases cited. They are to be commended for their diligence. One of the cases cited, Boerger v. Boerger, 26 N. J. Super, 90, 97 A. 2d 419, is clearly in point. Here the plaintiff of Protestant Faith married the defendant who was a Catholic. The plaintiff agreed that the marital rites be performed in the Catholic Church and that any children born of the marriage be brought up in that faith. The plaintiff wife filed a petition for divorce, which was met by a cross-petition for divorce by the husband. The husband was granted a divorce for the wife's aggressions. Upon trial, the wife was granted custody of the children. The plaintiff (wife) then returned to the Protestant Faith and entered the children in a Lutheran Church. The plaintiff in this action asked a restraining order against the defendant from interfering with the religious education of the children. There was an ante-nuptial agreement between the parties providing that children of the marriage be brought up in the father's faith. It is suggested by the defendant in the case now before us that the opinion in the Boerger case is not in point, first because the father, with knowledge that the children were attending a Lutheran School, made no attempt to object, and second, for the further reason that no question of religious training was raised when custody was granted to the mother. The opinion, however, deals directly with the defendant's claim of estoppel because of the ante-nuptial agreement. The court, in part, said, beginning on page 101:

"To invoke the principle of estoppel against the plaintiff because of

her antenuptial agreement, as defendant urges, would be to disregard the overriding consideration of what is best for the children and to determine—arbitrarily—their future welfare by an act with which they had nothing to do. In addition, it would deprive the mother of her right to change her mind—to choose a religion which apparently gives her greater spiritual comfort—and to inculcate in the children entrusted to her custody the religious principles which, for the time being, seem to her best. For like reasons, the court will not adopt defendant's contention that there has been an abandonment or waiver by plaintiff of her right, as custodian, to give other than Catholic training to her daughters. "* * *

"The view has been expressed that as between father and mother, any question respecting the child's religion should be settled by the custody award. Friedman, op. cit., 29 Harv. L. Rev. 485, 499 (1916). There is much to be said for the view that all other things being equal, the determining factor should be custody. There is a suggestion of this in In re Flynn, 87 N. J. Eq. 413 (Ch. 1917). The parent to whom custody is awarded must logically and naturally be the one who lawfully exercises the greater control and influence over the child. The mother, who lives with the child more than six days a week, as contrasted with the father's limited visitation of a few hours on Sunday, is the one who actually rears the child and shapes moral, mental, emotional and physical nature. To create a basic religious conflict in the mind of the child, and between it and its custodian would be detrimental to its welfare. "* * *

"In our view, the happiness and welfare of the children will best be served by committing their religious training to their mother, legally designated as their custodian, without interference by the father, until such time as they are of an age to exercise their own discretion in religious matters."

Paragraphs four and eight of the headnotes provide:

"4. Ante-nuptial agreement between husband and wife that children would be brought up in father's religion was not controlling in determining whether minor children of divorced parents should be reared in father's or mother's religion, nor would such agreement estop mother from rearing children in religion of her choice.

"8. Where custody of minor children was awarded to mother following divorce, and mother determined to rear children in accordance with her religion, notwithstanding ante-nuptial agreement to rear children in husband's religion, predilection of children was for mother's religion, and training of children in father's religion had not progressed so far that definite religious ideas were impressed upon children's minds, permitting mother to rear children in her religion was in best interests of children, and court would not interfere on application of father."

The case of McLaughlin v. McLaughlin, 20 Conn. Sup. 278, 132 A. 2d 420, involves, in the final analysis, an action seeking to enforce an antenuptial agreement (action in Habeas Corpus) basing the right of custody of three children on the provisions of the agreement whereby they were to be reared in the religious faith of the relator father.

The court said, in part, in denying either change of custody or to attempt to specifically enforce the provisions of the ante-nuptial agreement:

"* * * A court will not take a child's religious education into its own hands short of circumstances amounting to unfitness of the custodian, and in a dispute relating to custody, religious views afford no ground for removing children from the custody of a parent otherwise qualified."

See also Denton v. James, 107 Kan. 729, 193 P. 307.

In the case of Lynch v. Uhlinhoff, — Iowa —, 78 N. W. 2d 491, the facts are similar to those now before this court. In reversing the trial court whose order attempted to enforce by contempt a decree directing a wife as custodian of a child of the parties to rear the child in a particular religious faith, the court said on page 499:

"While, probably not decisive of the case, it may be well to point out the unfortunate effect upon the child of an attempt to enforce the vague and uncertain provisions of any decree ordering religious training. The able trial court was disturbed by this aspect of the case: It said: 'There is the matter of separating church and state; the possibility of inharmony with the mother going to one church and the child to another; the difficulty of policing this part of the decree; the cumbersome nature of court processes compared with the sensitive nature of this subject; and so on. Surely these are good reasons for parties not placing a provision on religion in a default decree * * *.' Our court is committed to the rule that the welfare of the child is generally the governing purpose in all proceedings involving custody, care and training. Chiefly for this reason, the courts have generally refused to enforce agreements between the father and mother concerning the religious training of children, but have held that the parent having custody is not bound by a previous contract. 29 Harvard Law Review, 485, 492; Zollman, American Church Law, 46-49; Andrews v. Salt, L. R. 8 Ch. App. 622; Brewer v. Cary, 148 Mo. App. 193, 127 S. W. 685-692, inclusive; Boerger v. Boerger, 26 N. J. Super. 90, 97 A. 2d. 419, 425, 427."

In the case of Jackson v. Jackson, 181 Kan. 1, 309 P 2d 705 (1957), although not completely in point, the court overruled a change of custody ordered by the trial court. The court stated (concerning a basic principle here involved) that one of the reasons for so ruling that the religious practices of the defendant wife, who was originally given custody, was, in part, the basis of the trial court's order changing custody. Both the majority and dissenting opinion reaffirm Denton v. James, 107 Kan. 729, syllabus five and six, 193 P. 307, heretofore cited, and in syllabus five and six, the court said:

"5. The courts have no authority over that part of a child's training which consists in religious discipline, and in a dispute relating to custody, religious views afford no ground for depriving a parent of custody who is otherwise qualified.

"6. Religious freedom, as guaranteed by our Constitution, should be faithfully upheld, and religious teaching to the children by a parent or parents, regardless of how obnoxious the same might be to the Court, the other parent or the general public should not and must not be considered as the basis of making child custody orders."

In the case of Stanton v. Stanton, 213 Ga. 545, 100 S. E. 2d 289, a petition was filed for divorce by a wife on the ground of cruelty. The trial court granted the divorce. The plaintiff moved before trial to strike from the answer as surplusage allegations concerning an ante-nuptial agreement as to the religious upbringing of the children, which motion was granted. This ruling was assigned as error in the Supreme Court. The court found the trial court acted correctly. Paragraphs eight, ten, eleven and twelve of the headnotes provide:

"8. Generally, welfare of child is controlling fact in determining right to custody, and contracts between parents concerning religious training of children will not be enforced and parent to whom custody is awarded is not bound by previous contract relating to religious training.

"10. Parents cannot by contract relating to religious training of their children restrict discretion of court in awarding custody and court may disregard entirely any such contract.

"11. Although legislature has recognized value and importance of religious training with respect to placement of children under jurisdiction of juvenile courts, code provision relating to religious aspects of placing such children does not restrict discretion of judge in placement of children in divorce proceeding.

"12. In action by wife for divorce wherein custody of children was involved, trial court properly struck from defendant's answer, ante-nuptial contract relating to religious upbringing of children and allegations which sought to enforce provisions of contract."
and on page 293, after citing most of the cases and Law Review articles herein referred to, the court said:

"In In re Nevin, 2 Ch. L. R. (1891) 299, it was held that an ante-nuptial contract that the children of the marriage should be brought up in a particular religious faith has been decided over and over again not to be in any legal sense a binding contract. In Agar-Ellis v. Lascelles, 27 W. R. 117 (1878), where it was sought to enforce a 'treaty for marriage' wherein a husband gave the wife and her friends an unconditional promise that the children of the marriage should be brought up in the religious faith of the woman, it was held that on principle and authority, it is settled 'so as to be beyond question or argument, that the ante-nuptial promise is in point of law absolutely void.' The Supreme Court of Missouri, in Brewer v. Cary, supra, after citing the above English cases, ruled against the enforceability of a prenuptial contract as is here involved, and stated: 'Nor can we, in determining what is for the welfare of the infant, determine that on considerations of religion. That would involve our determination between religions—and that we are not permitted to do * * * That, when the question of its (the child's) welfare turns on the direction of its training and upbringing in one belief or another, our courts, save as controlled by statute, have no power; that to do so would be a determination by the courts as to differences in religious belief, which is incompatible with religious freedom.' "

Also, in the case of Gluckstern v. Gluckstern, 158 N. Y. S. 2d 504, which deals with the questions of whether a wife otherwise a suitable person to be granted custody, shall be denied such custody because she

was a member of the Christian Science Church. Many of the cases herein cited are considered and in paragraphs five and six of the headnotes, it is said:

"5. Mere fact that religion of wife, who brought action for separation, was Christian Science did not ipso facto disqualify her from right to custody of six year old son.

"6. Fact that awarding custody of six year old son to wife in separation action by her might result in education of son according to the tenets of the Christian Science Church, would not affect right which she would otherwise have to custody of son."

The unenforceability of that part of an ante-nuptial agreement or a separation agreement imposing upon one party or the other the duty to direct the religious education of children before reaching the age of free choice, in the doctrine of a particular religious faith has been supported, as here indicated, not only by the great weight of case authority but also by well considered Law Review articles.

In an article by Leo M. Friedman in 29 Harvard Law 485 (1916), "The Parental Right to Control the Religious Education of a child," it is stated on page 492:

"* * * No mere agreement as to the religious education of children between father and mother before or after marriage is binding and is always open to either parent to change his mind, as it is his privilege to inculcate upon his children those religious principles which for the time being seem to him best. * * *

"It is further pointed out that for breach of a contract of a parent concerning the religious education of a child no damages can be recovered and it cannot be enforced by a suit for specific performance."

Likewise, in 50 Yale Law Journal, 1286, a note entitled "Enforceability of Antenuptial Contracts in Mixed Marriages," it is said on page 1289:

"As a matter of practice, however, it is difficult to see how the agreement could be enforced in a direct action between the contracting parties, where the issues would be most squarely raised. Since neither diminution of church status nor mental anguish to the Catholic spouse is susceptible to pecuniary valuation, only nominal damages would be available in such an action. And even granting a liberal interpretation of the rule that equity only intervenes to protect property rights, there would appear to be no basis for Chancery jurisdiction here. * * * American governmental aloofness from ecclesiastical disputes would seem to foreclose judicial consideration of this argument for preferential treatment. But even if this jurisdictional objection were overlooked and the original equality of religious interest considered subject to destruction by estoppel relating back to the time the contract was signed, a decree of specific performance would still be barred by the impossibility of enforcement. Recalcitrant obligors might conceivably be compelled to have children baptized or enrolled in Sunday or parochial schools. But the non-Catholic parent could scarcely be presented from expressing his personal views in family conversations or from nullifying formal church and school training by contrary private instructions."

Continuing at page 1292:

"By invoking jurisdictional limitations, many American courts have raised the tacit presumption that ante-nuptial contracts possess an enforceable legal status. As a matter of general policy, however, it would seem preferable for courts unequivocally to refuse enforcement. For the American doctrine of religious freedom necessarily subsumes a corollary privilege to change religious affiliations at will. This principle, coupled with the individual parent's duty to preserve his independent judgment with reference to the child's religious training would seem to negate the prior contract. Moreover, the court's inclination to overlook policy objections and to enforce otherwise valid contracts in the absence of express or implied legislative declarations would seem to be overcome in many jurisdictions by the terms of the religious freedom clauses of their state constitutions. In addition to the denial of power to establish an official religion, contained also in the First Amendment to the Federal Constitution, many state Bills of Rights affirm the individual's right to worship according to his own untrammelled volition. This affirmative grant would seem to place the privilege freely to change religious affiliations—whether one's own or those of minor natural children—among those inalienable liberties of speech and conscience which are not subject to restriction by private agreement."

And in a review of the unenforceability of contracts between parents on the future religious education of their children in the Boston University Law Review, Vol. 35, page 333, it is said on page 363:

"There are many reasons why such agreements should not be judicially enforceable. Aside from the unprovability of money damages and the impracticability of specific enforcement—the grounds most frequently stated—are the more cogent reasons set forth above for judicial non-intervention in the religious upbringing of children except where necessary to protect their temporal welfare. Whether the agreement is specifically enforced against one who has custody or is effectuated by awarding custody to someone who is of the faith specified in the agreement and who would otherwise not be given custody, the child's temporal welfare is sacrificed. To suggest that the agreement will only be enforced if the child's temporal welfare is not thereby prejudiced is meaningless; it is inevitable that, if an unwilling parent is forced by a court of law to rear his child in a religion which he disbelieves, the child will suffer. There is often no way to avoid visiting upon children the sins of their parents, but the courts, at least, should not be party to the injustice by enforcing the contract against a third party maleficiary. Besides, there is a strong policy in a democracy in allowing persons to worship God as their conscience now dictates, a policy that is equally applicable to teaching their children how to worship God. It would be contrary to this policy judicially to enforce a contract not to change one's own religious beliefs or practices; and it is equally contrary to this policy judicially to enforce a contract not to change the religious upbringing of one's children."

See also, annotation 12 A. L. R. 1153 with supporting authorities, where it is stated "An agreement at or before marriage between husband

and wife, as to the religion in which their children should be educated, is not a legal contract."

The defendant seeks to find support for his position in the recent case of **Robrock v. Robrock, 167 Oh St 479.** In that case, the Supreme Court held enforceable a contractual obligation in a separation agreement adopted by the court's decree, some of the provisions of which would otherwise have been beyond its power to impose without the separation agreement, the obligation to continue insurance and cost of education of the children beyond their twenty-first birthday.

The syllabus of the case provides:

"1. The full equity powers and jurisdiction lodged in the Court of Common Pleas by the provisions of §3105.21 R. C., extend to orders made for the disposition, care, maintenance and support of minor children.

"2. In a divorce action, the Court of Common Pleas, in making an order for the disposition, care, maintenance and support of minor children of the parties, may incorporate in its decree the terms of an agreement entered into between such parties.

"3. Where an agreement of the parties is incorporated in the decree of a court in a divorce case, such agreement is superseded by the decree, and the obligations imposed by such agreement are thereafter imposed by decree and may be enforced as such.

"4. In a divorce case, the court, to give effect to a separation agreement, has the power to incorporate it in the divorce decree or base the decree on its provisions, even though the court, in the absence of an agreement of the parties, would not have the power to make the resultant decree.

"5. Where, as part of a valid agreement, a husband agrees to provide a college education for his children and further agrees to keep in effect insurance policies on his life in which such children are beneficiaries, and where such agreement is incorporated in a decree divorcing the husband from his wife, such decree becomes binding upon the husband even though the performance required by the decree may extend beyond the minority of the children."

It is also noted that the provisions related to the payment of money which could be enforced by court action. On page 489, the Court said:

"* * * Inasmuch, however, as there has been no refusal to pay for the expenses of education beyond the minority of the children or no attempt to cancel the insurance policies or change the beneficiaries therein, the question of whether such refusal or attempt would be a contempt is not presently before us."

It must be noted that this is an action seeking an order in contempt based on a promise that is not legally enforceable and, therefore, in that respect, is to be distinguished from the Robrock case. It is also to be distinguished from that case by the fact that the order here sought is in contempt for failure to perform a promise which involves personal services, and is, therefore, not enforceable in a legal proceeding. An action in specific performance will not lie nor is the violation of such a promise the subject of an action in damages.

We emphasize the fact that in the Robrock case the court had for

496

its determination a valid agreement concerning matters of a secular nature only, viz., to provide a college education for his children and to keep in effect insurance policies on his life with his children as beneficiaries. Such benefits were to continue after the children had reached their majority. Also, that case must be distinguished from the instant case because here we are dealing with matters of a religious nature only, which in our opinion, are beyond the jurisdiction of the court to enforce by contempt proceedings or otherwise.

For the foregoing reasons, the judgment is affirmed. Exceptions noted. Order see journal.

HURD and KOVACHY, JJ, concur.