168 A.2d 102 (1961)
Eugene J. WOOD, Plaintiff,
v.
Virginia S. WOOD, Defendant.
Court of Chancery of Delaware, New Castle.
March 1, 1961.
*103 James J. Walsh, Wilmington, for plaintiff.
Thomas S. Lodge, of Connolly, Bove & Lodge, Wilmington, for defendant.
MARVEL, Vice Chancellor.
The complaint in this case recites that plaintiff and defendant were married in 1952 by a duly ordained priest of the Roman Catholic Church and that prior to such marriage defendant, a non-Catholic, made an agreement under the terms of which she promised that all children born of the marriage would be "* * * baptized and educated in the Catholic faith and according to the teachings of the Catholic Church * * *."
According to plaintiff, defendant failed during the parties' marriage, which has since been dissolved by divorce, to provide proper care for the two children born of the marriage or to raise them according to the tenets of the Roman Catholic religion. Plaintiff contends that because of defendant's neglect of such children as well as her denial of their alleged right to be brought up in the Catholic faith he should be awarded their custody. Defendant, having answered the complaint and counterclaimed for separate maintenance for herself and the children as well as the award to her of their custody, the case moved on to the trial stage.
Despite a confused situation in the formal papers of record I am satisfied that by stipulation of counsel at and before trial that what plaintiff seeks primarily is custody of his children, but that if such not be awarded to him, that in the alternative specific performance be granted of defendant's pre-nuptial promise that issue of the marriage would be brought up according to the teachings of the Roman Catholic Church. The children are now in their mother's custody.
Turning to the counterclaim, it is now apparent that what defendant seeks is maintenance solely for herself for the period between the parties' separation and their divorce as well as the award to her of custody of the children, the support of the children by the father having been provided for by order of the Family Court for New Castle County.
Opposing counsel in seeking to obtain for their clients the custody of the children born of the marriage are both desirous that this Court in the exercise of its alleged residual powers over the affairs of minors take jurisdiction of the basic dispute here at issue, § 105 Infants, 27 Amer.Jur. p. 827 et seq. However, no Delaware precedent for the exercise of such alleged jurisdiction is cited, nor has independent research on my part found a case in which this Court has concerned itself with a family dispute over the custody of a child.
The Court of Chancery of the State of Delaware, is, of course, one of limited jurisdiction, § 342 of Title 10 Del.C. providing that: "The Court of Chancery shall not have jurisdiction to determine any matter wherein sufficient remedy may be had by common law, or statute, before any other court or jurisdiction of this State." This statute read in the light of other statutory and common law remedies in the area under *104 consideration must always be closely analyzed wherever a case of first instance such as the one here presented is raised, and inasmuch as counsel have not undertaken to brief this aspect of the case (compare Glanding v. Industrial Trust Company, 28 Del.Ch. 499, 45 A.2d 553), I shall decline to pass on it until it has been briefed.[1]
Turning to the question of whether or not this Court in the exercise of its judicial discretion should specifically enforce the ante-nuptial agreement relied on by plaintiff, it must first of all be again noted that the Court at this juncture is not concerned with custody per se. Accordingly, cases decided by courts specifically charged with jurisdiction over custody matters in which the religious welfare of minors has been a matter to be taken into consideration in the over-all picture are not in point. Rather, the question for decision is whether or not defendant's pre-nuptial undertaking to bring up children born of the parties' marriage in the Catholic faith can be independently enforced by judicial decree in much the same way that a contract for the sale of land may normally be specifically enforced.
Notwithstanding some authority to the contrary, I am satisfied that the type of agreement which defendant here made under the auspices of church authorities is not a matter with which a civil court should concern itself. While the British precedents in support of such principle of law are colored by an archaic view of the father's historic position as the head of the family, nonetheless they clearly hold that such an agreement has no legal force, Andrews v. Salt[2] (1873) L.R. 8 Ch. 622, and In Re Newton,[3] (1896) 1 Ch. 740, 65 L.J.Ch.N.S. 641, 73 L.J. N.S. 692, 44 Week.Rep. 470. Also see Annotation, 12 A.L.R. 1153.
In the United States such agreements have been most often deemed unenforceable on the general grounds of impossibility of enforcement of the promise, it being pointed out that the promisor might nullify an enforcement decree by paying lip-service to it but at the same time privately instructing a child to ignore the teachings received in formal church or parochial instruction, 50 Yale Law Journal 1286, 29 Harvard Law Review 485, and 35 Boston University Law Review 333. These same writers in treating such agreements as legal nullities also stress the traditional aloofness from ecclesiastical matters of American governmental agencies and the opposing principle implicit in our specific constitutional guaranties of religious freedom.
In pure custody matters the welfare of the child must be the court's overriding consideration, and the responsibility for religious training of a child must largely fall into the hands of the parent selected by a court as the custodian. It would obviously hamstring the broad discretionary powers required in reaching proper custody decisions were a court required to give legal force to an agreement entered into before the child in question has come into the world. Accordingly, it would be presumptuous for me independently to lend the enforcing powers of this Court to an agreement which, if enforced, might well interfere with the formulation of a comprehensive custody decree by a court of competent *105 jurisdiction. In brief, I am satisfied that the purely ecclesiastical arrangement here sued upon is not a proper matter for this Court's consideration, there being, as noted above, overwhelming British precedent that such an agreement is not to be recognized as a binding contract in any civil court. On the other hand, were I to recognize such an agreement as actionable, I am satisfied that there is no practical way in which it could be properly enforced in equity. The better reasoned American cases deny relief in actions on such agreements either on grounds of impracticability of enforcement or on the basis that such an undertaking violates constitutional guarantees of religious freedom, McLaughlin v. McLaughlin, 20 Conn.Sup. 278, 132 A.2d 420, and Hackett v. Hackett, Ohio App., 150 N.E.2d 431. Compare Boerger v. Boerger, 26 N.J.Super. 90, 97 A.2d 419. The rationale of these cases is more persuasive than the theological concepts inherent in the contrary holdings of Ramon v. Ramon, Dom.Rel.Ct., 34 N.Y.S.2d 100, and Shearer v. Shearer, Sup., 73 N.Y.S.2d 337. And see contra Martin v. Martin, 308 N.Y. 136, 123 N.E.2d 812, 813.
In disposing of defendant's counterclaim for separate maintenance, I need merely read from the divorce decree nisi entered in favor of the present plaintiff as a result of an action for divorce brought by him against the defendant in the Superior Court of New Castle County on January 21, 1960, in which plaintiff charged defendant with desertion commencing on May 12, 1957. While defendant in her answer denied desertion, the decree nisi, dated May 6, 1960, states inter alia as follows: "* * * it appearing that the said Virginia S. Wood, the defendant in this action, has been guilty of wilful desertion of the said Eugene J. Wood for two years and upwards next preceeding the commencement of this action * * *" In view of this express finding by a court of competent jurisdiction I conclude that defendant as a counterclaimant is legally disqualified from seeking separate maintenance from plaintiff for the period dating from their separation in May 1957 to August 5, 1960, the date of the final decree dissolving the parties' marriage, Vol. 3, Nelson On Divorce and Annulment, § 32.21 et seq., and compare DuPont v. DuPont, 33 Del.Ch. 60, 90 A.2d 476. I also decline to allow her a fee for her attorney for bringing such counterclaim.
Order on notice.
NOTES
[1] Relevant statutory provisions pertaining to the custody of infants would appear to be inter alia, § 952 of Title 10 Del.C. pertaining to the concurrent jurisdiction of the Family Court for New Castle County in habeas corpus proceedings brought for obtaining the custody of infants, and § 1510 of Title 13 Del.C. eliminating the jurisdiction of the Superior Court for New Castle County over the care and maintenance of children in divorce and annulment proceedings.
[2] "We are of opinion that such an agreement is not binding as a legal contract. No damages can be recovered for a breach of it in a Court of Law, and it cannot be enforced by a suit for specific performance in equity."
[3] "It was conceded by counsel, and in truth, it is in principle and authority settled so as to be beyond question of argument that the antenuptial promise is, in point of law, absolutely void."