DECISION AND JUDGMENT ENTRY
This is an appeal from a Lawrence County Common Pleas Court judgment that, inter alia, granted the motion of Ken A. Lawson, plaintiff below and appellee herein, to enjoin his ex-wife, Susan E. Lawson, defendant below and appellant herein, from withdrawing their daughter from St. Joseph Central High School. The following error is assigned for our review:
 "THE COURT BELOW ERRED IN ENJOINING DEFENDANT-APPELLANT FROM WITHDRAWING THE PARTIES' MINOR DAUGHTER FROM ST. JOSEPH CENTRAL HIGH SCHOOL."
A brief summary of the facts pertinent to this appeal is as follows. The parties married on October 23, 1986, and one child was born as issue of that marriage (Cassidy Lawson, d/o/b 5-19-87). Appellee filed a divorce complaint on June 24, 1999 and alleged that he and his wife were no longer compatible.[1] He asked for an "equitable division" of assets as well as an "appropriate" order regarding the care and custody of their daughter.
Appellant denied that she and her husband were incompatible, but counterclaimed for divorce on grounds of gross neglect of duty and mental cruelty. She asked for a division of assets as well as sole physical and legal custody of their daughter.
On May 11, 2001 the trial court issued a final divorce decree that terminated the parties' marriage and included the following provision:
 "1) That [appellant] shall be designated as residential parent and legal guardian of the parties' minor daughter; subject, however, to [appellee] having Rule 53 visitation . . .
* * *
 3) [Appellee] shall pay to [appellant] the sum of Four Hundred Seventy Two and 03/100 Dollars ($472.03), plus $9.44 poundage, per month as and for child support. Currently, however, both parties agree that it would be in their daughter's best interest to continue to attend the St. Joe Central High School. Consequently, the child support obligation shall be increased in an amount equal to the tuition for their child's schooling at this parochial school which for the coming school year is expected to be approximately $4,000.00. In that regard, [appellee] shall be solely responsible for the tuition expenses associated therewith, and so long as he pays said tuition, his support obligation to [appellant] shall be adjusted by the amount [appellee] actually pays for tuition in proportion to the parties' respective incomes. By way of example, [appellee's] support obligation would be $343.63 per month based on the total of $4,000 tuition expense." (Emphasis added.)
On June 20, 2001, appellee filed a motion to adjust his child support obligation pursuant to the divorce decree's formula. Appellee asserted that he had paid his daughter's tuition at St. Joseph Central High School (St. Joseph's) for the upcoming school year. The trial court granted his motion and, on August 7, 2001, modified appellee's support obligation to $334.63 as specified in the divorce decree.[2] That same day, appellant filed a "notice" with the Court and stated: (1) that Cassidy would thereafter attend public school; and (2) that her ex-husband may wish to apply for a tuition reimbursement. Appellee responded with a motion for an "emergency order" to prevent Cassidy's removal from St. Joseph's and requested that the Court personally interview Cassidy to determine where, in fact, she wished to attend school.
The matter came on for hearing on August 15, 2001. It is uncontroverted that Cassidy attended St. Joseph's since she started school, that she excelled academically and that she wished to continue her studies at St. Joseph's. Appellant's sole reason for withdrawing Cassidy from St. Joseph's and sending her to public school is the reduced amount of child support that appellant will receive as a result of appellee paying Cassidy's tuition. Appellant claimed that this reduction is not in Cassidy's financial best interests.
On August 21, 2001, the trial court granted appellee's motion to enjoin appellant from withdrawing Cassidy from St. Joseph's.[3] The court indicated that it was merely enforcing the prior divorce decree and noted that all "prior orders" would "remain in full force and effect." This appeal followed.
Appellant argues in her assignment of error that the trial court erred in enjoining her from withdrawing Cassidy from St. Joseph's. Appellant argues that this judgment violates a long-standing principle of domestic relations jurisprudence that custodial parents may determine their child's educational needs and goals, including the particular school that their child should attend. In light of the facts and circumstances present in the instant case, however, we disagree with appellant.
This Court does not dispute, as an abstract proposition of law, that custodial parents may generally choose the schools to which they send their children. See Smith v. Smith (Dec. 28, 1999), Franklin App. No. 98AP-1641, unreported; also see Gardini v. Moyer (1991), 61 Ohio St.3d 479,485, 575 N.E.2d 423, 427 (Wright, J. Dissenting); Rand v. Rand (1985),18 Ohio St.3d 356, 360, 481 N.E.2d 609, 613 (Celebrezze, C.J. Concurring). The central issue in the case sub judice, however, is whether a trial court may enforce a divorce decree's terms, which includes the parties' agreement regarding their child's schooling. We resolve that question in the affirmative.
In the case at bar, the parties' May 11, 2001 divorce decree provides that "both parties agree[d] . . . it would be in their daughter's best interest to continue to attend . . . St. Joe Central High School." (Emphasis added.) The decree further states that appellee's child support obligation increases in an amount commensurate with Cassidy's tuition for "the coming school year." Thus, the parties' explicit agreement envisioned that Cassidy would continue to attend St. Joseph's. We do not believe that appellant should be permitted, absent a substantial change in circumstances and absent a finding that changing schools is in Cassidy's best interest, to fail to abide by her explicit agreement regarding Cassidy's schooling. Moreover, if appellant did not agree to that condition and the decree was erroneous in that regard, appellant should have appealed that judgment. She took no appeal, however, and the matter is now res judicata. In any event, we agree with the trial court that appellant is bound by the divorce decree's terms.
We readily concede that circumstances can exist under which certain agreed terms in a separation agreement or a divorce decree may no longer be practical or equitable and need not be prospectively enforced. Indeed, the Revised Code provides for the modification of custody and support under a variety of circumstances. See generally R.C.3109.04(E)(1)(a) R.C. 3119.79. We find nothing in the record of the instant case, however, to indicate that any modification is warranted in the instant case.
The trial court proceedings in the case sub judice occurred only a few months after the court issued the divorce decree. We note that appellant did not offer any evidence of a change in circumstances or any evidence that it was no longer in Cassidy's best interest to attend the parochial school. In fact, at one point appellant admitted that it was in Cassidy's "best interest to go to St. Joe . . ." Appellant explained, however, that "financially, it's not in her best interest." This suggests that the sole reason that appellant did not want Cassidy to attend St. Joseph's involved additional child support money. We agree with the trial court's apparent conclusion that additional child support money, under the facts present in the instant case, constitutes an insufficient reason to withdraw Cassidy from the school which both parties agreed that Cassidy would attend and that Cassidy herself wants to attend.
Appellant cites several cases that discuss a custodial parent's discretion to choose their child's school. In Hackett v. Hackett (App. 1958), 78 Ohio Law Abs. 485, 150 N.E.2d 431, the Sixth District Court of Appeals held that a custodial parent could not be forced to send her child to a parochial school pursuant to the terms of a separation agreement that had been incorporated into a divorce decree. We believe, however, that Hackett is distinguishable from the case at bar. In Hackett, the parties agreed to raise their child in the Catholic faith, which included parochial schooling. The Court held that the "[s]eparation [a]greement, dealing with the promise of the mother to see to it that the daughter, placed in her custody, be reared in the Catholic [f]aith and attend a school affiliated with the Catholic Church cannot be enforced by judicial decree." (Emphasis added.) Id. at 489, 150 N.E.2d at 434. It appears that the school issue in Hackett was inextricably tied to the parties' agreement to raise their child in the Catholic religion, something for which the custodial mother had later developed objections. The Court held that the custodial parent should not be required to send her child to a school advocating religious beliefs contrary to her own.
Appellant also cites to dicta in In re Landis (1982), 5 Ohio App.3d 22,24, 448 N.E.2d 845, 848, which refers to the Hackett case for the principle that "the custodial parent has a right to determine what school the child will attend . . ." We note, however, that the remainder of that passage provides that "enforcement of an agreement to send the child to a parochial school espousing religious beliefs contrary to the conscienceand beliefs of the custodial parent constitutes an infringement upon herfree exercise of religion." (Emphasis added.) Landis is also distinguishable from the instant case as it concerns enforcement of a father's obligation to pay tuition at a religious institution (an obligation which was upheld) rather than the mother's obligation to send the child to a particular school. Id. In the cause sub judice, we find no religious issue or disagreement.
We concede that the case sub judice presents a difficult issue. Furthermore, neither party has cited to us any authority directly on point and we have found none in our own research. However, we believe that absent a demonstrated and substantial change in circumstances, notions of fundamental fairness allow the trial court to enforce a stipulation that parents have made regarding their child's schooling. This is particularly true when, such as in the cause sub judice: (1) no change in circumstances has been established; and (2) no showing has been made that the agreed school choice is no longer in the child's best interests. We again emphasize that this case is not a situation in which one party objects on religious grounds to their child's parochial schooling. Cassidy has always attended St. Joseph's and her mother introduced no evidence that she had religious objections to Cassidy's schooling. Rather, appellant's sole reason for withdrawing Cassidy involved increased child support money.
In the end, the appellant bears the burden of demonstrating error on appeal. See e.g. In re Jordan (Sep. 12, 2001), Lorain App. No. 01CA007804, unreported; Culbertson v. Salser (Dec. 22, 1999), Summit App. No. 19487, unreported; Stewart v. Harney (Mar. 7, 1988), Warren App. No. CA87-80-060, unreported. Appellant has not persuaded us that the trial court erred in its decision and, accordingly, we overrule her assignment of error. The judgment of the trial court is hereby affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Kline, J.: Concur in Judgment Opinion.
[1] Appellee later amended his complaint to include allegations of gross neglect of duty and extreme cruelty.
[2] We presume that this was a typographical error and that the court meant to modify the support obligation to $343.63 as set forth in the divorce decree.
[3] The court did, however, order appellee to pay to his ex-wife the difference between the full and reduced child support amounts for parts of May, June and July when Cassidy was not in school.