**POPE v. POPE.**

No. 28903.

St. Louis Court of Appeals.

Missouri.

April 20, 1954.

Rehearing Denied May 17, 1954.

Jones, Hocker, Gladney & Grand, Lon Hocker, Franklin Ferriss, St. Louis, for appellant.

Cobbs, Blake, Armstrong, Teasdale & Roos, Henry C. M. Lamkin, St. Louis, for respondent.

HOUSER, Commissioner.

Motion to modify the custody provisions of a divorce decree. The original decree entered in October, 1950 granted the wife a divorce and awarded her the custody of the two children, a girl then aged 7 weeks

and a boy 7 years old, together with the right to remove the children to Butte, Montana, reserving to the father the right to see and visit the children at reasonable times and to have the boy for a period not exceeding two months in the summer. In April, 1953 the mother filed a motion to modify so as to secure the custody of the boy from 9 o'clock a. m. to 1 o'clock p. m. on each Sunday during the two-month period, on the ground of changed conditions in that she has moved back to St. Louis; that the religious faiths of the parents differ and that during the two-month period the father has been taking the boy to the father's church and refusing to allow the boy to attend the church of the mother's faith; that the boy is upset by the conflict and that it is to the best interest of the child that he attend one church, the church of the mother's faith, throughout the entire year. Upon a hearing the circuit court made the order of modification as prayed, and the father has appealed.

The sole question for review is whether there has been a change of conditions which, in the best interests of the child, require a modification of the terms of the original custodial arrangement.

Prior to the marriage the parties did not discuss whether their children should be reared in the mother's faith, although defendant told plaintiff that he would accompany his wife to her church on occasions. For a brief period after the marriage he did this, but after a time plaintiff stopped going to church, feeling that her husband did not want her to go. She would not attend any other church. Defendant estimated that he attended the church of his choice four or five times a year, while plaintiff testified that during the last seven years of their marriage defendant did not attend church at all. The parties could not agree on the church to which their son should be sent. Plaintiff refused to permit the boy to attend the father's church although plaintiff testified that defendant never suggested that he be sent to his church. The boy was baptized in the faith of the mother, but the father would not permit him to attend that church. The child apparently was the innocent victim of the strong conviction on the part of each of the contending parents that the child should not be reared in the church of the other parent, each of them seemingly preferring that the child have no religious contacts than to be raised in any church other than his very own. As a result of the disagreement the boy did not attend any church. At the time of the divorce plaintiff signed a settlement agreement with defendant which undertook to cover the subject of custody, but plaintiff did not ask that the agreement or the decree affect defendant's right to send the child to any particular church. That question was never taken up and did not enter into the consideration of the parties.

Following the divorce plaintiff sent her son to her own church regularly. After eight months in Montana, the mother returned to St. Louis for the purpose of securing employment. During defendant's custody in the summers of 1951 and 1952 the boy was taken regularly to the father's church. In May, 1952 defendant remarried, joined the church attended by his new wife, and commenced taking an active part in the work of that church. At the beginning of his 1952 visit with his father the boy stated that his mother had asked him to talk to his father about the church he was to attend. Father and son had a rather lengthy discussion on the subject. According to the father, the boy expressed the view that at present he was unable to decide to which church he wished to belong during his adult life; that he wished to suspend judgment on that subject until he got a little older and that he was quite willing to go with his father to the church the father and his then wife were attending. That was the only occasion the boy discussed the subject of religious instruction with his father.

It was plaintiff's opinion that it would be for the best welfare for the boy to attend the same church all the time. She testified that she had not discussed the matter with the church or school authorities but that in the spring of 1953 the boy asked her to try

to arrange with his father for him to attend his own church as in the winter, and once or twice inquired how she was doing, because he would like to have that arrangement. Apparently neither of the parties had any difficulties in the exercise of visitation privileges during the period the child was with the other. The difficulty that has arisen, according to defendant, is related to the difference in the religious beliefs of the parties. Defendant testified that he was not willing to send the boy to the church of the mother's faith while he had custody in the summer although he was not objecting to the boy's attending her church at other times, but that if the boy had asked to be taken to her church he would have taken him. He stated that the boy did not request to be taken to any church nor did he object to the church to which his father took him. Plaintiff testified that she wanted the custody of the boy during the Sunday morning hours "because it is church hours at that particular time." She conceded that there was no real reason why the boy could not go to church without her "if he were shown where to go, and were given advantage."

■ Respondent contends that appellant is precluded from appellate review of most of the points raised for the reason that they were not preserved in the motion for a new trial. The question of the sufficiency of the evidence to support the judgment, however, may be raised in the appellate court whether or not the question was raised in the trial court. Section 510.310, subd. 4, RSMo 1949, V.A.M.S. Under Supreme Court Rule 3.23, 42 V.A.M.S., that question is excepted from the requirement that allegations of error must be presented in the trial court in a motion for new trial in order to be presented for appellate review. See Montgomery v. Montgomery, Mo.App., 257 S.W. 2d 189.

■ Upon the record presented plaintiff failed to show any change of condition affecting the child's best interest and welfare warranting the modification which was made.

Plaintiff's return from Montana to St. Louis is not a sufficient change of condition to justify the change in the court order. There is no pretense that she has been excluded by defendant from the enjoyment of reasonable visitation privileges with her son during the two-month interval. On the contrary, she admits that defendant oftentimes voluntarily has brought the child to visit her during the two-month interval. The fact that she is in closer proximity to her son and thereby is enabled to enjoy these visits more often, as a resident of St. Louis, than she would have been if she had maintained her residence in Montana, lends no persuasion to her argument. Certainly her moving to St. Louis gave plaintiff no additional rights to the custody of the child which were not in existence at the time of the decree. See Watkins v. Watkins, Mo.App., 230 S.W.2d 778.

Nor has there been any significant change of conditions in connection with the religious issue which, for the promotion of the welfare of the child, either requires or justifies the proposed change in the custody provisions of the decree. The very problem now evident and resulting from the difference in the religious views of the contending parents was inherent in the situation, was clearly foreseeable and might have been anticipated at the time the original decree was entered, yet plaintiff did not deem it necessary at that time to incorporate into the decree any such regulatory provisions as are now sought to be introduced. The problem is not a new factor in the relationship of the parties, Parks v. Cook, Mo.App., 180 S.W.2d 64, and we find no change of conditions which makes it any more of a problem now than it was then. So far as the record discloses the father, since the divorce, has neither forced his son to attend the father's church nor forbade the son's attendance at the mother's church. While unwilling to volunteer to take the child to her church the evidence indicates that the father would respect the boy's wishes, if expressed, to attend that church. Nor is there any evidence that the father has undertaken to instill into the mind of the child his own religious views to the ex-

clusion or prejudice of the teachings of the mother's church. The only fact alleged in the motion which might have formed the basis of a substantial claim of changed condition was the charge that the boy was upset by the conflict between the parents over his religious education. Conceivably a parental dispute over religion might be waged in such a manner as to create in the mind of the innocent victim a deep-seated religious conflict which eventually would affect, or threaten to affect, the child's mental health. In such an event the court should intervene for the protection of the child's health. But that is not the situation here, so far as this record discloses. Plaintiff gave brief testimony, in seven words, that "There is a conflict in his mind." She did not explain or enlarge on this bare statement except to give her opinion that the question becomes increasingly important as the child grows older. She did not testify to any facts from which it might be inferred that it is a serious conflict, or that his welfare has been adversely affected thereby. She gave no testimony whatever that his general demeanor, attitude, school work, appetite, health or outlook has been affected one iota by the so-called conflict in his mind. Her testimony was wholly uncorroborated. No church, school, medical or psychiatric authorities, nor any of the boy's associates, in or out of school, appeared in support of this charge. Plaintiff's opinion was nullified by her further testimony that the child is a "fine, big, healthy boy—a nice boy—who weighs about eighty pounds and is almost five feet tall," ten years of age and apparently "a thinking, rather precocious child, with a good understanding."

Although we are ruling that the particular order of modification made by the trial judge, giving the mother the physical custody of the child during church hours throughout the father's visitation period, cannot be sustained under the evidence, we agree fully with the statement of the trial judge that "it would be unfortunate for the child to be torn between the differing religious faiths of the parents." It therefore should be firmly borne in mind by appellant that the welfare of the child is the guiding star in these matters, and that if in the future, on a motion subsequently filed, it should appear that appellant has created or fostered a basic religious conflict in the mind of this child, instilled in him a disrespect for or disbelief in the religion of his mother, or erected religious barriers between the mother and son, such conduct would be extremely detrimental to the welfare of the child, Boerger v. Boerger, 26 N.J.Super. 90, 97 A.2d 419, and would constitute a sufficient change of condition to support an order modifying the decree in such a manner as to eliminate any such adverse factor. Compare Luethans v. Luethans, Mo.App., 243 S.W.2d 801, and cases cited, loc. cit. 803.

For the reasons given the Commissioner recommends that the judgment of the circuit court be reversed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the Court.

The judgment of the circuit court is, accordingly, reversed.

ANDERSON, P. J., BENNICK, J., and BROADDUS, Special Judge, concur.