**In re the MARRIAGE of Dava Mae Sue HERIFORD and Leland Arthur Heriford.**

**Dava Mae Sue HERIFORD (now Foltz), Appellant,**

v.

**Leland Arthur HERIFORD, Respondent.**

**No. KCD 29880.**

Missouri Court of Appeals, Western District.

Sept. 4, 1979.

P. Wayne Kuhlman, Liberty, for appellant.

Max Von Erdmannsdorff, Kansas City, for respondent.

Before SHANGLER, P. J., SWOFFORD, C. J., and WASSERSTROM, J.

SWOFFORD, Chief Judge.

This case involves an appeal by the mother, the custodial parent, from a decree defining the terms and conditions of temporary custody awarded to the father with reference to two sons born of the marriage. The facts underlying the present area of conflict are not disputed.

The marriage of these parties, solemnized in 1961, ended in a decree of dissolution

entered on May 27, 1975, wherein property rights were settled in accordance with a contract between them, and the custody of the two sons, Brian, then less than a month short of his 5th birthday, and Jason, then two months into his 2nd year of life, was awarded to the mother with a general broad right of visitation to the father, said custody provisions also according to a contractual agreement of the parties.

Soon after this decree of dissolution, the mother and father entered into an extrajudicial agreement whereby the father was to have certain rights to implement the broad visitation terms awarded him by the decree. Among these was the right of temporary custody of the boys on the first and third weekends of each month from 5:00 p. m. Friday to 5:00 p. m. *Sunday,* and for one month during the summer. This is the only real area of dispute as to the custodial arrangement between the parents.

On May 13, 1977, the mother (appellant here) filed her motion to modify the original decree so that it provide that the temporary custody of the father on weekends be delineated as the first weekend of each month from 5:00 p. m. Friday to 5:00 p. m. *Saturday* and on the third weekend of each month from 5:00 p. m. Friday to 5:00 p. m. Sunday, thus changing the practice which the parties had been following for approximately two years by eliminating the temporary custody on the Sunday of the first weekend.[1]

The petitioner's motion in the above regard states that the original decree "has been amended and includes detailed custody, visitation and support provisions". If any such amendment as to detailed custody and visitation provisions had been accomplished as to the original decree of May, 1975, such does not appear in the record before this Court. An amendment had been made by the court on September 15, 1975 as to the provisions of the original decree as it related to support and maintenance of the children, and maintenance of

the mother, the payment of certain debts and the maintenance and payment for insurance, but the "decree of the 27th of May 1975, in all other respects" was to remain in full force and effect. So this left the father, so far as any formal decree, with general reasonable visitation rights as provided in the original decree of May, 1975. The practice as to weekend temporary custody in the father stemmed from the extrajudicial agreement so far as this record reveals. However, the terms of such agreement and the practice pursued by the parents thereunder over the intervening two years is not in dispute.

So that the narrow issue presented on this appeal may be placed in perspective, it must be noted that the father-respondent is an ordained minister in the Southern Baptist faith. However, his occupation is that of a Principal of a school in Kearney, Missouri, where he still resides. During the period of the marriage of the parties they both attended and were active in the First Baptist Church of Kearney and their sons were taken there for whatever services were afforded children of such tender years. Following the dissolution of the marriage, the father continued his attendance and that of his sons on the occasions when he had weekend and summer custody. Shortly thereafter, however, he changed his church affiliation and began attending and became active in the Kearney Christian Church and took his sons there on the Sundays when they were with him. Both parties have remarried since the dissolution.

The appellant, since her remarriage, moved from Kearney, Missouri to Overland Park, Kansas and she and her present husband (and the sons when they are with her on Sundays or other religious days) attend the Nall Avenue Baptist Church in Overland Park, a church of the same affiliation, Southern Baptist, as her church in Kearney.

The appellant testified that the reason she was requesting the modification of the temporary custody provisions was the im-

---

1. The appellant also filed a motion for nunc pro tunc order correcting the original decree, and a motion that the respondent be cited for contempt, but these motions were never presented to the court below and may be deemed abandoned.

portance of the children having a "church home", and her view of the importance of "consistency" in home church worship. She summarized her request, " * * * I'm asking that they be at their home church one more Sunday a month".

The appellant presented the testimony of Dr. Sam Robinson, a clinical psychologist, in support of her request. He stated his opinion that it was important that the children "have an identity that this is their church" but that "This doesn't mean that they can't have other church association with their father or with the grandparents or whomever". He further expressed an opinion that visitation with their father was "very necessary for the children" and that "The children seem to be doing well".

There is no evidence in this record that there is any basic conflict between the church denominations here involved, both being of the same Protestant theological persuasion. Neither does the record reveal that the boys' attendance with their father for worship in his church had any bad effect on them. Neither was there any charge or evidence that the father objected to his sons attending the Baptist Church with their mother, or that he tried to prejudice his sons against the Baptist Church, or that he tried to instill any conflicting beliefs or dogma in them or foster any disbelief in or disrespect for that church.

Further, the appellant freely admitted that her former husband was a deeply religious person and raised no objection to the arrangement as to weekend church attendance when the children were with him during a period of approximately two years. Indeed, her request to the court to eliminate the children's attendance at their father's church in Kearney because of the avowed distraction of her "church home" concept surprisingly extended to only one of the two Sundays a month when they so attended.

Rather, she obviously placed principal reliance in support of her claim of abuse of discretion by the trial court in leaving intact the weekend temporary custody arrangements for the father upon the provi-sions of Section 452.405 RSMo 1969, which provides in relevant part:

"(1) Except as otherwise agreed by the parties in writing at the time of the custody decree, the custodian may determine the child's upbringing, including his education, health care, and *religious training*, unless the Court after hearing, finds, upon motion by the noncustodial parent, that in the absence of a specific limitation of the custodian's authority the child's physical health would be endangered or his *emotional development* impaired. (Emphasis added)

No other conclusion, from a study of the records below and appellant's brief and arguments here, can be reached but that she maintains this section of the statute gives her an absolute mandate as custodial parent to determine all facets of the children's religious training absent a showing that such determination endangers the child's physical health or impairs the child's emotional development.

█ It is the view of this Court such was not the legislative intent evinced by the enactment of this statute. The Legislature clearly intended to provide a guideline for the custodial parent and the courts in the general area of child welfare and upbringing, lodged the initial decision on such matters with the custodial parent, and placed the burden upon the noncustodial parent to establish the fault of such custodial determination. In so doing, the Legislature gave recognition to (and did not sweep away) the firmly established principle that at all levels, at all times and in all forums, the welfare and best interests of the child is of prime and overriding importance as measured by the particular facts and circumstances of each case before the courts. *Blair v. Blair*, 505 S.W.2d 444, 446 [3] (Mo. App.1974); *Pearson v. Pearson*, 575 S.W.2d 934, 935 [1] (Mo.App.1978).

Further legislative recognition of this principle, pertinent to this case, is afforded in Section 452.400 RSMo 1969, which provides, in part:

"(1) A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development."

Under Section 452.375 RSMo 1969, further legislative recognition is given to the paramount status of the child's best interest and welfare. Also, that statute directs the court in its determination of that paramount factor, among other things, to consider the wishes of the child's parents.

In the posture of this record, the position of appellant that Section 452.405 RSMo 1969 gives her the absolute, total and unqualified right to determine all aspects of the children's religious training in the absence of any further showing, is untenable.

No area in the realm of decisions in child custody cases is more fraught with difficulty than where differences in religious beliefs of the parents exist. The courts have shown a constitutional reluctance and, indeed refused, to be placed in a position of deciding the merits or validity of conflicting religious differences between parents. Rather, they have applied to such a situation the so firmly rooted principle of what is in the best interests of the children involved and have laid down standards which should be applied to determine whether judicial interference in this area, as to child custody, is warranted.

In *Pope v. Pope*, 267 S.W.2d 340 (Mo.App. 1954) the custody of two children was awarded to the mother, and the father was awarded visitation rights and temporary custody of his son for two months each summer. The religious faith of the parents differed. The mother filed a motion to modify the temporary custody decree upon the basis that during the two months in the summer the husband took their son to a church of his faith, against her wishes. She sought a decree giving her the custody of the boy from 9:00 a. m. to 1:00 p. m. each Sunday during the two-month period so she could take him to the church of her faith in order that he attend only one church (the "church home" concept). The trial court sustained the motion to modify and the appellate court reversed on the ground that there was a lack of evidence which demonstrated any harm to the child. In so doing, the court laid down the standards which required proof in the event of future proceedings to modify based upon the religious disagreement of the parents, and said, l. c. 343 [4]:

"and that if in the future, on a motion subsequently filed, it should appear that *appellant has created or fostered a basic religious conflict in the mind of this child, instilled in him a disrespect for or disbelief in the religion of his mother*, or *erected religious barriers between the mother and son*, such conduct would be extremely detrimental to the welfare of the child (citation omitted), and would constitute a sufficient change of condition to support an order modifying the decree in such a manner as to eliminate any such adverse factor". (Emphasis added)

In the case of *Cissell v. Cissell*, 573 S.W.2d 722 (Mo.App.1978), the court was confronted with a situation similar to the case at bar. In the *Cissell* case, the father had been awarded temporary custody of the parties' two children on three weekends a month, from Saturday morning until Sunday evening, for four continuous weeks in the summer and on birthdays and various holidays. The father was a Catholic and the children had been baptized in that church. The mother, custodial parent, was a member of the Jehovah Witness Church and was active in its affairs. She filed a motion to modify the temporary custody award for the reason that the children, being in the temporary custody of the father on weekends, prevented her from determining the children's religious education, vested in her under Section 452.405, supra. The respondent father did not dispute the mother's right as custodial parent to give the children religious training, but asserts that there was no showing that the children's physical well-being or emotional development was impaired; that the children's emotional development would be impaired without his shared custody; that Section

452.400 RSMo 1969, supra, granted him visitation rights unless such endangered the children's well-being; and that under Section 452.375 RSMo 1969, supra, the trial court was required to consider the wishes of both parents and their interrelationship with the children.

The court held that these statutes must be read and considered together, and, when so considered, they are consistent with pre-existing case law that the parents' personal rights are of secondary importance to the rights and welfare of the children.

The mother claimed that the rights granted her with reference to the religious training of the children was superior to the father's rights under the temporary custody award. In response to such position, the court stated, l. c. 724 [4]:

" * * * We hold neither right is superior to the other; both are important to the children's welfare. * * * "

The court held that the mother had failed to meet the burden of proof placed upon her under the circumstances of that case to show that the temporary custody by the father was deleterious to the welfare of the children.

As previously noted, this record is silent as to any actions by the father which would tend to create or foster any religious conflict or in any way affect the children's emotional welfare. His conduct, character and habits stand unchallenged and his affection for his children, and theirs for him, is undisputed. Further, the mother made no attempt to delineate any conflicts in specific religious practices, teachings, beliefs, religious views, doctrines or dogma (if any of importance exist) between her religious preference and that of the father, which in and of themselves were so conflicting as to foster adverse emotional or physical effects in the children.

No abuse of discretion appears, and the judgment is accordingly affirmed.

All concur.