NO. 4-03-0479 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of

DAVID WAYNE MINIX,

          Petitioner-Appellee,

          and

WENDY SUE DUNAVEN-MINIX,

          Respondent-Appellant.

)

)

)

)

)

)))

Appeal from

Circuit Court of

Macon County

No. 99D651  

Honorable

Albert G. Webber,

Judge Presiding.

JUSTICE APPLETON delivered the opinion of the court:

Respondent, Wendy Sue Dunaven-Minix, appeals the trial court's order denying her request to prohibit petitioner, David Wayne Minix, from taking their child to his church.  She contends that by denying her motion, the trial court has violated her statutory exclusive right as the custodial parent to control the religious upbringing of the parties' minor child.  We affirm.  

I. BACKGROUND

On October 23, 2000, the circuit court of Macon County entered a judgment dissolving the parties' marriage.  Wendy (we refer to the parties' first names for simplicity purposes and not out of disrespect) was granted custody of their minor child, Nicole, born May 13, 1996, subject to David's right to visitation.  No specified visitation schedule was ordered with the exception of alternating major holidays.  The parties were to continue visitation as previously arranged and agreed between them.

On August 2, 2002, David filed a motion requesting that the trial court specify a visitation schedule.  On October 4, 2002, the trial court entered an order specifically defining David's visitation including every other weekend from 3:30 p.m. on Friday until 5:30 p.m. on Sunday.  On November 6, 2002, Wendy filed a document entitled "Motion to Modify and Limit Visitation," requesting the trial court to enforce her statutory right and order David to refrain from taking Nicole to any church or from teaching her any religious faith other than Wendy's.  David filed a response claiming that Wendy and he both practice the Christian faith, no provision in the judgment of dissolution prohibits him from taking Nicole to church, Nicole is not injured in any way from participating in religious activities with David, and Wendy had never asked David not to take Nicole to church with him.

On March 24, 2003, the trial court conducted a hearing on Wendy's petition.  Wendy testified that she was a member of the Unity Church while David practiced a religion "close to Pentecostal," which were different denominations within the Christian faith.  Wendy desires that Nicole be educated in the Unity religion.  Wendy spoke with David about Nicole's religious education and informed him that Nicole was getting confused by attending both churches and "it needed to stop."  She asked David to stop taking Nicole to his church.  Wendy testified that she was not asking that David's visitation be interrupted, only that he not take her to his church.  On cross-examination, Wendy testified that her and David's churches taught completely different beliefs, which caused Nicole to pose questions.

David was called as an adverse witness.  He testified that both denominations are of the Christian faith, and he denied that Wendy asked him to stop taking Nicole to church with him.  Upon questioning by his counsel, David testified that he spent approximately two hours in church on Sundays.  He had been taking Nicole to church with him for approximately three years.  No other evidence was presented.

On March 25, the trial court, by docket entry, denied Wendy's motion, finding that Wendy failed to show any substantial threat to Nicole by David's religious instruction.  The trial court found nothing to suggest that David's religious instruction prevented or hindered Wendy's religious instruction.  On April 21, 2003, Wendy filed a motion to reconsider, alleging, 
inter
 
alia
, the trial court erred in its consideration of relevant case law.  On May 19, 2003, the trial court denied Wendy's motion.  This appeal followed.

II. ANALYSIS

 The issue before us is whether the trial court's order, denying Wendy's request to prohibit David from taking Nicole to his church during visitation, was an abuse of discretion.  We hold that it was not and affirm the trial court.

The resolution of this issue requires sensitivity to two competing interests.  On the one hand, Wendy, as the custodial parent, has the statutory right, pursuant to section 608(a) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/608(a) (West 2000)), to control the religious upbringing of her child.  See 
In re Marriage of Nuechterlein
, 225 Ill. App. 3d 1, 7, 587 N.E.2d 21, 25 (1992) (custodial parent controls the religious training of the child regardless of premarital agreement); 
In re Marriage of Bennett
, 225 Ill. App. 3d 828, 833, 587 N.E.2d 577, 581 (1992) (agreement to raise children in the Jewish faith was not an enforceable contract; decision is made by custodial parent).

On the other hand, David, as the noncustodial parent, has a right to unrestricted visitation with his child pursuant to section 607(c) of the Dissolution Act (750 ILCS 5/607(c) (West 2000)), as well as a right to the free exercise of religion.  We resolve the controversy in David's favor for the reasons that follow.

We note that the trial court is vested with wide discretion in resolving visitation issues.  The appellate court will not interfere with the trial court's determination unless an abuse of discretion occurred or where manifest injustice has been done to the child or parent.  
In re Marriage of Diehl
, 221 Ill. App. 3d 410, 429, 582 N.E.2d 281, 294 (1991), 
cert.
 
denied
, 144 Ill. 2d 632, 591 N.E.2d 20 (1992); 
In re Marriage of Tisckos/Stewart
, 161 Ill. App. 3d 302, 310, 514 N.E.2d 523, 528 (1987).

First, we look to the language of the relevant statutory authority.  Section 608(a) provides:

"Except as otherwise agreed by the parties in writing at the time of the custody judgment or as otherwise ordered by the court, 
the custodian may determine the child's upbringing, including
 but not limited to, his education, health care[,] and 
religious training
, unless the court, after hearing, finds, upon motion by the noncustodial parent, that the absence of a specific limitation of the custodian's authority would clearly be contrary to the best interests of the child."  (Emphases added.)  750 ILCS 5/608(a) (West 2000).

Section 607(c) provides in relevant part as follows:

"[T]he court shall not restrict a parent's visitation rights unless it finds that the visitation would endanger seriously the child's physical, mental, moral[,] or emotional health."  750 ILCS 5/607(c) (West 2000).

We note that this case is procedurally skewed in that section 608 provides that disputed issues should come before the court upon the noncustodial parent's motion.  The noncustodial parent has the burden of going forward.  Here, Wendy, the custodial parent, was the moving party.  Nevertheless, the parties are before the court, and we decide the issue on its merits.

Wendy argues that this court should follow its decision in 
Tisckos/Stewart
 and find that the trial court abused its discretion in failing to prohibit David from taking Nicole to his church.  We decline to do so, distinguishing 
Tisckos/Stewart
 from the case 
sub
 
judice
.

In 
Tisckos/Stewart
, the custodial mother was Roman Catholic, and the father, after remarrying, changed his religious affiliation from Catholic to Baptist.  The mother was raising the minor child in the Catholic faith, as she was attending Catholic school and in the midst of her religious training.  The father acknowledged it was a mandatory requirement of the Roman Catholic Church that those of Catholic faith attend Sunday mass.  The father stated he was not attempting to convert the child from Catholicism, but desired to take the child to church with him simply because his church's services occurred during his visitation time.  The pastor of the Catholic parish testified that attending a non-Catholic church would confuse the child, place her in a dichotomy, and be counterproductive to her religious education.  He further testified to the doctrinal differences between Catholic and other Christian denominations.  
Tisckos/Stewart
, 161 Ill. App. 3d at 306-07, 514 N.E.2d at 525-26.

This court affirmed the trial court's order (1) requiring the noncustodial father to deliver the minor child to the mother's home on Sunday mornings in time for the child to attend church services with the mother or transport the child to a Roman Catholic Church to fulfill her mass obligations, and (2) prohibiting the father from taking the child to religious services other than those approved by the mother.  In so holding, we found the visitation provisions were accommodations to be made in the child's best interest based upon the right of the custodial mother to determine the religious upbringing of the child rather than restrictions of the father's visitation rights.  
Tisckos/Stewart
, 161 Ill. App. 3d at 311, 514 N.E.2d at 529.

Tisckos/Stewart
 addressed the questions of whether the father's visitation rights were improperly restricted and whether his first amendment rights were violated by the trial court's order.  We held they were not.  Without a detailed analysis, we held the trial court's order, requiring the father to transport the child to Catholic mass on Sundays and prohibiting him from taking her to any other church, were not "restrictions" on his visitation within the meaning of section 607(c) of the Dissolution Act.  Instead, they were permissible "accommodations" to be made by him in the best interest of the child.

An important distinction between our holding in 
Tisckos/Stewart
 and our decision here is that in 
Tisckos/Stewart
, we were presented with evidence of the dichotomy between the two religions at issue.  For example, evidence was presented that as a Roman Catholic, a person undertakes certain responsibilities and is required to do certain things pursuant to the tenets of the religion.  There was a doctrinal distinction between Catholicism and Protestantism.  The child was in the midst of her religious training, and the evidence showed that any additional religious teachings would prove counterproductive to her education or confusing to her.  The doctrinal distinctions and the stage of the child's religious education affected the trial court's order in that the court specifically held that by ordering the child only to attend Catholic services, it was attempting to avoid confusion in the child's mind.  We affirmed the order.

Here, no evidence of doctrinal differences between the two churches was presented.  No evidence of how the child suffered harm by attending church with David was presented.  Therefore, we are faced with the following question:  whether section 608(a) of the Dissolution Act (750 ILCS 5/608(a) (West 2000)) permits the custodial parent to obtain an order prohibiting the noncustodial parent from involving the child in his religion without evidence that the two religions are mutually exclusive or without evidence of harm.  As in 
Tisckos/Stewart
, this issue requires us to balance the custodial parent's right to control the religious upbringing of the child with the noncustodial parent's right to the uninterrupted and unrestricted visitation with the child and the freedom of religion.

Given the dearth of Illinois authority, we look to the case law of other states.  In the majority of American jurisdictions that have considered the question, the courts have refused to restrain the noncustodial parent from exposing the child to his or her religious beliefs and practices absent a clear, affirmative showing that those religious activities would be harmful to the child.  See 
In re Marriage of Heriford
, 586 S.W.2d 769, 773 (Mo. App. 1979); 
In re Marriage of Murga
, 103 Cal. App. 3d 498, 505, 163 Cal. Rptr. 79, 82 (1980); 
Felton v. Felton
, 383 Mass. 232, 239, 418 N.E.2d 606, 610 (1981); 
In re Marriage of Mentry
, 142 Cal. App. 3d 260, 264-65, 190 Cal. Rptr. 843, 846 (1983); 
Zummo v. Zummo
, 394 Pa. Super. 30, 49-50, 574 A.2d 1130, 1140 (1990); 
In re Marriage of Weiss
, 42 Cal. App. 4th 106, 117, 49 Cal. Rptr. 2d 339, 346 (1996).

As was stated in 
Zummo
:

"Custody and visitation cases essentially involve salvaging operations.  Judges are asked to preserve, as best as may be, the interests of any children involved, while at the same time disentangling their parent's spousal relationship.  Under the best of circumstances it is a task requiring Solomonic judgment.  

The difficulties involved are compounded when emotional issues such as the religious upbringing of children are involved."  
Zummo
, 394 Pa. Super. at 35, 574 A.2d at 1132.

The United States Supreme Court specifically has held parental authority in matters of religious upbringing may be encroached only upon a showing of a "substantial threat" of harm to the "physical or mental health of the child or to the public safety, peace, order, or welfare."  
Wisconsin v. Yoder
, 406 U.S. 205, 230, 32 L. Ed. 2d 15, 33, 92 S. Ct. 1526, 1540 (1972).

Turning to the law in other jurisdictions, the Missouri case of 
Heriford
 provides some guidance.  There, the custodial mother sought to modify the father's weekend visitation rights to exclude Sunday morning so the children could attend church with her rather than the father.  The mother attended a Southern Baptist church, and the father attended the local Christian church.  The mother's argument was primarily based upon the statutory provision that gave the custodial parent the right to determine the child's religious upbringing.  See Mo. Rev. Stat. §452.405 (1969).  The mother interpreted the statute as giving her the absolute, total, and unqualified right to determine all aspects of the children's religious training.  The appellate court affirmed the trial court's denial of the mother's motion, finding the parents' personal rights are of secondary importance to the rights and welfare of the children.  
Heriford
, 586 S.W.2d at 773.  The court noted the following:

"[T]he mother made no attempt to delineate any conflicts in specific religious practices, teachings, beliefs, religious views, doctrines or dogma (if any of importance exist) between her religious preferences and that of the father, which in and of themselves were so conflicting as to foster adverse emotional or physical effects in the children."  
Heriford
, 586 S.W.2d at 773.   

The case of 
Murga
 is likewise relevant to the issues before us.  In 
Murga
, the custodial mother requested that the father be restrained from instructing their child on any religious subject without her prior approval.  According to the mother, the father's religious practices require the child to spend 15 to 20 minutes a day with the family reading and discussing the Bible, praying, and singing.  The child told his mother that his father had taken him on a door-to-door crusade to save people.  The trial court restrained the father from discussing religion over the telephone with the child but otherwise denied the mother's request.  The mother argued that, as the custodial parent, she had the absolute right to direct the child's religious upbringing and that the father's religious practices had so alienated the child that the mother was unable to exercise that custodial right.  The appellate court held:

"[W]hile the custodial parent undoubtedly has the right to make ultimate decisions concerning the child's religious upbringing, a court will not enjoin the noncustodial parent from discussing religion with the child or involving the child in his or her religious activities in the absence of a showing that the child will be thereby harmed."  
Murga
, 103 Cal. App. 3d at 505, 163 Cal. Rptr. at 82.

Because the mother failed to present any evidence that exposure to the father's religious practices was harmful to the child, the appellate court affirmed the trial court's order.  
Murga
, 103 Cal. App. 3d at 505, 163 Cal. Rptr. at 82.

In another California decision, 
Mentry
, the custodial mother sought to prevent the father, a Mormon, from engaging the children in any religious activity, including discussing his religious practices with them, attending services, or providing the children with articles, publications, or other religious material while they were in the father's presence.  The trial court granted the mother's request.  The appellate court, adopting the rule set forth in 
Murga
, reversed, noting that the holding in 
Murga
 was "'consonant with the rule consistently followed by [the] courts that custody decisions will not be governed by the religious tenets or practices of parents absent a clear showing that the parent's religious practices would be harmful to the child.'"  
Mentry
, 142 Cal. App. 3d at 264-65, 190 Cal. Rptr. at 846, quoting 
Murga
, 103 Cal. App. 3d at 505, 163 Cal. Rptr. at 82.  The 
Mentry
 court also looked to the case law in other jurisdictions and found that the Massachusetts case, 
Felton
, contained the best synopsis of the case law in which the courts have addressed the question whether or how to accommodate diverse religious practices of parents, living apart, in the upbringing of minor children.  
Mentry
, 142 Cal. App. 3d at 265, 190 Cal. Rptr. at 846-47.

In 
Felton
, the trial court entered an order prohibiting the father from instructing the children in his religion.  The Massachusetts Supreme Judicial Court reversed, holding that the evidence was insufficient to support such a disposition.  Relying on 
Murga
 and numerous cases from other states, the court summarized the law as follows:

"The parents together have freedom of religious expression and practice which enters into their liberty to manage the familial relationships.  [Citations.]  But the 'best interests' of the child are to be promoted, and when the parents are at odds, the attainment of that purpose may involve some limitation of the liberties of one or other of the parents.  [Citations.]  However, harm to the child from conflicting religious instructions or practices, which would justify such a limitation, should not be simply assumed or surmised; it must be demonstrated in detail."  
Felton
, 383 Mass. at 233-34, 418 N.E.2d at 607-08.

In 1990, a Pennsylvania appellate court decided 
Zummo
, which provided guidance in the area in an exhaustively researched and well-reasoned opinion.  There, the trial court entered an order requiring the noncustodial father to arrange the children's attendance at their synagogue's Sunday school during his weekend visitation.  The trial court also prohibited the father from taking the children to religious services contrary to the Jewish faith.  The appellate court affirmed the former requirement but struck the latter finding:

"[E]ach parent must be free to provide religious exposure and instruction, as that parent sees fit, during any and all period of legal custody or visitation without restriction, unless the challenged beliefs or conduct of the parent are demonstrated to present a substantial threat of present or future, physical or emotional harm to the child in absence of the proposed restriction."  
Zummo
, 394 Pa. Super. at 78, 574 A.2d at 1154-55.

The 
Zummo
 court refused to presume that exposing the child to contrary religions was generally harmful.  Any harm must be demonstrated by competent evidence.  
Zummo
, 394 Pa. Super. at 83, 574 A.2d at 1157.  The court was mindful of a parent's authority during lawful periods of visitation, stating that "restrictions will only be imposed on that authority by consent, or upon clear demonstration that in absence of the proposed restriction, visitation will have a detrimental impact on the child."  
Zummo
, 394 Pa. Super. at 45, 574 A.2d at 1138.

Finally, another California appellate court decision followed suit.  In 
Weiss
, the reviewing court affirmed the trial court's refusal to prohibit the mother from engaging the child in her religious activities.  The court, citing 
Murga
, 
Mentry
, 
Felton
, and 
Zummo
, held the father, who was Jewish, failed to meet his burden of making a clear affirmative showing that the child was harmed by engaging in non-Jewish religious activities with the mother, who was Christian.  The reviewing court held that the trial court had properly refused to enjoin the mother from involving the child in religious activity.  
Weiss
, 42 Cal. App. 4th at 117, 49 Cal. Rptr. 2d at 346.

Following the line of authorities cited above, we affirm the trial court's refusal to prohibit David from taking Nicole to his church or teaching her his religious practices when neither evidence of doctrinal differences nor of any harm to Nicole was presented.  It is the view of this court that the legislature's intent in enacting section 608 of the Dissolution Act (750 ILCS 5/608 (West 2000)) was to provide a guideline for the parties and the court in the general area of child welfare and upbringing.  The legislature granted the custodial parent the authority to make the initial decision on such matters and placed the burden upon the noncustodial parent to establish the fault of any such custodial determination.  Section 608 does not, however, exist in a vacuum.  That section must be read in conjunction with other sections of the Dissolution Act, including section 607(c) (750 ILCS 5/607(c) (West 2000)), which grants to the noncustodial parent the right to unrestricted visit­ation.  More important, section 608 must yield to the best interest and general welfare of the child.  

Wendy failed to prove that engaging in religious activities with David has been harmful to Nicole.  She testified only that "[Nicole] was getting confused and [going to church with David] needed to stop."  David testified that he had taken Nicole to church with him for approximately three years.  Sufficient time had passed to allow Wendy, if such harm existed, ample opportunity to discover any problems.

Consistent with our decision in 
Tisckos/Stewart
 and other relevant authority, we hold that section 608 of the Dissolution Act permits the custodial parent to control the child's religious upbringing absent proof that involvement in any other religion is not harmful to the child.  Trial courts have the authority to set forth accommodations during lawful visitation periods with a showing that such accommodations are necessary to eliminate or prevent any harm to the child and are in the child's best interest.  Absent proof of harm or that attendance at religious services with the noncustodial parent somehow interferes with the custodial parent's selection of the child's religion, the noncustodial parent is entitled to his or her visitation period without interference from the custodial parent despite the authority granted to the custodian in section 608 of the Dissolu­tion Act.

III. CONCLUSION

Accordingly, we affirm the trial court's order denying Wendy's motion requesting that David be prohibited from engaging the child in his religious practices.

Affirmed.

KNECHT, P.J., and TURNER, J., concur.